**BURGESS VIBROCRAFTERS, Inc. v.
ATKINS INDUSTRIES, Inc.**

No. 10643.

United States Court of Appeals
Seventh Circuit.

May 15, 1953.

312

A. Trevor Jones, Kenneth F. Burgess and
George I. Haight, Chicago, Ill., for appellant.

·I. Irving Silverman and Myron C. Cass,
Chicago, Ill., for appellees.

Before FINNEGAN, LINDLEY and
SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

Burgess Vibrocrafters, Inc., the manufacturer of a small, electrically operated jig saw, brought this action seeking a declaratory judgment of invalidity and non-infringement of Design Patent D–161,025, owned by the defendant Allen Atkins. The defendants, Allen Atkins and Atkins Industries, Inc., the exclusive patent licensee and likewise the manufacturer of a small electric jig saw, filed counterclaims alleging patent infringement, trademark infringement and unfair competition, and seeking a judgment holding that the plaintiff's Design Patent D–162,279 is void under Rev. Stat. § 4918, 35 U.S.C.A. § 66, as interfering with the defendants' prior design patent.

The District Court entered a decree in favor of the defendants on all issues. The plaintiff was enjoined from further patent and trademark infringement and unfair competition, an accounting was ordered to determine the defendants' damages, and it was ordered that the defendants recover from the plaintiff reasonable attorney fees. From this judgment the plaintiff appeals.

Both the Burgess and the Atkins saws are of small, lightweight construction, suitable principally as hobby devices for cutting ornamental patterns or designs from light wood. Both saws are equipped with a sanding disc and on each a file may be substituted for the saw blade. The devices thus embody the three-fold function of saw, sander and filer. The Burgess saw also features a fourth function, a blowing mechanism for dispersing sawdust and filings.

The Atkins saw was developed pursuant to an arrangement entered into early in 1949 between Atkins and the National Scientific Products Co. This arrangement provided that Hoffman, an employee of National, should work with Atkins; that Atkins should pay the development costs and that he should own the patent. After the design of the patent in suit was developed National went into the business of manufacturing the saw under an agreement with

Atkins to pay him a royalty on sales. About 30,000 saws were sold during the 1949 season.

Among National's customers was the plaintiff, Burgess, a manufacturer and distributor of various electrical tools. The plaintiff sold about 10,000 of the Atkins saws, in part over the counter of its retail store in Chicago, but principally through mail orders solicited by newspaper and magazine advertisements.

Late in 1949 National decided to discontinue the manufacture of the Atkins saw, so informed Burgess and asked for and received from Burgess an offer for the purchase of the tools, dies and inventories for the manufacture of the Atkins saw. The Burgess offer was never accepted because Atkins decided to undertake the manufacture of the jig saw himself and he purchased the business from National. The plaintiff thereupon decided to develop its own jig saw. A Chicago designing firm was then employed and paid $2,500 for designing the Burgess saw. In July of 1950 Burgess placed on the market the saw which had been so designed for it. After the Atkins design patent was issued in November of 1950, but previous to the issuance of the patent on the Burgess saw, Atkins circularized the trade, charging that the Burgess saw was an infringement of his design patent and threatening the plaintiff's customers with suit for infringement. Burgess thereupon filed its action for a declaratory judgment.

We consider, first, the question of the validity of the Atkins Design Patent D–161,025. Congress has provided that one who has invented "any new, original, and ornamental design" for an article of manufacture may be granted a patent therefor. 35 U.S.C.A. § 73. As in the case of mechanical patents, the design must be the product of inventive faculty. "In the one, must appear creative novelty and utility; in the other, creative originality in artistry." Battery Patents Corp. v. Chicago Cycle Supply Co., 7 Cir., 111 F.2d 861, 862. It is not enough merely to say that the design is new and pleasing to the eye. Its conception must require that exceptional talent which is beyond the skill of the ordinary designer. Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606; Associated Plastics Companies v. Gits Molding Corp., 7 Cir., 182 F.2d 1000.

It must be kept in mind that the exercise of inventive genius, so essential to validity, relates only to the appearance of the article and its aesthetic appeal. It is artistic creativeness which the statute rewards. As the Supreme Court early recognized, in Gorham v. White, 14 Wall. 511, 81 U.S. 511, 525, 20 L.Ed. 731, "It is the appearance itself * * * that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense."

These abstract criteria necessarily are elusive guides by which to test the patentability of a design. However, after a very careful study of all the evidence in this case, including the physical and documentary exhibits, we are convinced that the design covered by the Atkins patent does not exhibit that creative artistry requisite to the monopoly protection which the statute accords.

The Atkins saw embodies a base; a saw table supported above the base; a vertically movable blade; an overhanging arm for supporting the blade above the table; a mechanism on the base beneath the table for driving the blade and for changing the rotary motion of the motor shaft to the required up-and-down movement of the blade; and a sanding disc mounted on the motor shaft. All of these functional features are found in the prior art. All except the sanding disc are basic features of almost any jig saw, although, of course, there is no precise standard of shape, size or configuration.

The various parts of the Atkins saw are made of cast aluminum. The base, flat and rectangular in shape, is supported by rubber suction-cup feet, and has recessed holes near the corners for use in bolting the saw to a work bench. The motor block, with the motor laminations exposed, is mounted on the base. Attached to the motor shaft on one side is a scotch-yoke or transmission

slide which imparts the required up-and-down movement to the blade. The sanding disc is mounted on the other end of the motor shaft, and adjacent to it is a sander table which is attached to the motor block. The saw table, equipped with a miter guide or protractor, rests off-center on the top of the motor block. The overhanging saw arm is of channel shaped construction and is attached to the motor block at the rear beneath the table. It is equipped on the end with a saw guide and a leaf-spring to which the upper end of the blade is attached.

■ Just as it is not enough merely to say that a design is pleasing in appearance, neither is it sufficient simply to show that no prior design is "like" the one in suit. That a design may be distinguished from those found in the prior art does not import the required novelty and ornamentation. A design must be tested by its over-all aesthetic effect, and its artistic appeal, if there be any, must represent a step which has required inventive genius beyond the prior art. A base, a rising mass supporting a saw table and an overhanging arm were basic features of numerous prior jig saw designs. Some of those to which we have been referred appear more pleasing to the eye than others, and no two of them look precisely alike. As would be expected, the Atkins design represents still another variation in detail, and without a doubt is easily distinguished in appearance. But its general appearance does not differ significantly from prior designs. Certainly its artistic appeal, if any, beyond the state of the prior art did not require the application of inventive genius. We cannot find in the Atkins design that "creative originality in artistry" which is essential to a valid patent. Battery Patents Corp. v. Chicago Cycle Supply Co., 7 Cir., 111 F.2d 861, 862.

■ Under the circumstances of this case, we attach no importance to the contention that the Atkins saw enjoyed a notable commercial success. It is true that in a doubtful situation evidence of commercial success may be decisive in resolving the doubt in favor of the patentee. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721. "Where, as here, however, invention is plainly lacking, commercial success cannot fill the void." Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 272, 93 L.Ed. 235. This court has several times stated that popular appeal alone is not sufficient to sustain a patent, and cannot be used to create a doubt where clearly there has been no invention. Hueter v. Compco Corporation, 7 Cir., 179 F.2d 416, 418; S. Dresner & Son v. Doppelt, 7 Cir., 120 F.2d 50, 52.

We do not agree with the defendants that any presumption of validity arose from the plaintiff's alleged imitation of the Atkins design. See Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794. In the view which we take of this case, it is not necessary that we engage in such an extended discussion of the Burgess and Atkins designs as would be required were we to consider the question of patent infringement. Suffice it to say that, while in general appearance the two designs are similar, just as they each resemble those found in the prior art, there is no such similarity as would justify an inference that the Burgess is a copy or an imitation of the Atkins design.

■ We are aware that whether or not a patent is valid is a question of fact, and that a lower court's findings are not to be upset unless they are clearly erroneous. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672. However, the ultimate question here is whether the design achieves the high level of creative artistry demanded by the statute. We note that the parol testimony in the District Court does not tend to resolve that question. There was testimony that the Atkins design was not "like" any other, and that it was "pleasing to the eye." One witness stated that in his opinion it was not the work of an ordinary designer, but rather a "development," apparently having reference to the utilitarian features of the saw. In the last analysis, the answer must come from a study of the physical and documentary exhibits, which are before us as they were before

the District Court. Consequently, we are free to resolve the question before us by an independent analysis of the relevant evidence.

We have likewise concluded that the findings of the District Court with respect to trademark infringement and unfair competition are clearly erroneous.

The term "3-in-1" is claimed by the defendants as the trademark for the Atkins saw, though it was never registered as such. This designation did not appear on the saw itself, nor on any carton or box for the saw. It did appear on order blanks and instruction sheets packed with each individual saw, and it was used extensively in advertising copy. It is said that the plaintiff was guilty of trademark infringement and unfair competition arising out of its use of the terms "3-in-1," "4-in-1" and "all-in-one" in advertising the Burgess saw.

There can be no dispute that the claimed trademark, as it was used, described the three purposes of the Atkins saw, namely, sawing, sanding and filing. Atkins admitted that the designation "refers to the fact that our jig saw is a saw, sander, and filing machine." The manager of National Scientific Products Co. stated that that was the significance of the term "3-in-1" to him. The District Court, though it found the term not to be descriptive, did state that it "suggested to the buyer and prospective buyer the three functions of the saw, namely, sawing, sanding and filing." Most significant is the manner in which this designation was used in descriptive literature and advertising copy. There, the Atkins device was widely characterized as the "3-in-1 jig saw-sander-filer."

█ The defendants contend that the term "3-in-1," alone, is not descriptive. But we do not consider the effect of its use in a vacuum. Here, it was employed in combination with the words "jig saw-sander-filer." It was universally understood to have reference to those three operations of which the machine was capable. As the term was used, we think it obviously was merely descriptive, and it therefore cannot constitute a valid trademark. Wilhartz v. Turco Products, 7 Cir., 164 F.2d 731, 732-733; DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co., 297 Ill. 359, 365, 130 N.E. 765.

█ Since we have held that the defendant did not have a valid trademark in the words "3-in-1," the use by the plaintiff of those or similar words in its advertising could amount to unfair competition only in the event, first, that such use was calculated to mislead the public and thus enable Burgess to "pass off" its saws as those manufactured by Atkins; or, secondly, that the term used by the defendants had acquired a secondary meaning. Wilhartz v. Turco Products, 7 Cir., 164 F.2d 731, 733.

We may disregard the latter point. There is no finding, nor is there any evidence, that the words had acquired a secondary meaning. The only question, then, is whether the plaintiff has attempted to create public confusion as to the identity of its saw by using descriptive terminology in its advertising similar to that used in describing the Atkins saw.

Advertising layouts were used in the sale of the Burgess saw which were similar in many respects to those employed in promoting the Atkins saw. As we have stated, however, the shape and configuration of the Burgess saw is sufficiently different in significant detail as to readily distinguish it in appearance from the Atkins design. Moreover, it carries, prominently displayed on the front of the black housing which encloses the motor of the saw, the Burgess trademark, an octagonal design, with a background of bright yellow, bearing the letters "BVI" in black. The various advertising layouts not only pictured the saw, but referred also to its "built-in automatic blower," a feature not found on the Atkins saw and one which was not advertised in connection with its sale. There is no evidence that the plaintiff, by its advertising methods, attempted to deceive the public with regard to the identity of the Burgess saw. Indeed, the District Court expressly determined that Burgess had not "passed off" its jig saws as those of the defendants when, at the conclusion of the

trial, the court granted the plaintiff's motion to strike that allegation from the counterclaim.

Neither can the charge of unfair competition be sustained on the theory that Burgess violated any fiduciary duty owing to Atkins, or that Burgess acquired or was in a position to use any trade secrets relating to the design and manufacture of the Atkins saw. Atkins expressly admitted, and the District Court found, that there was no confidential or fiduciary relationship existing between the parties.

Despite this specific admission and finding, and despite the District Court's determination that there had been no "passing off" of its saws as Atkins saws by the plaintiff, the defendants' brief is replete with exaggerative statements imputing to the plaintiff sinister motives and unlawful methods in designing and marketing the Burgess saw. These inferences are without foundation in the record.

The plaintiff, of course, had no obligation to undertake the manufacture of the Atkins saw under a royalty arrangement with Atkins, or to continue selling the saw after negotiations to purchase the business had failed. On the contrary, the plaintiff had every legal and moral right to introduce to the public a competitive product and to capture whatever share of the market it was able by legitimate means to acquire. The argument that Burgess had "slavishly" reproduced the Atkins design is nothing less than fantastic. The motor housing on the Burgess saw and the BVI trademark are just two of its obviously distinguishing features, and it requires but a cursory examination of the two saws to refute this exaggerated claim. We conclude that the record is devoid of any indication that the plaintiff was guilty of improper conduct.

The judgment of the District Court is reversed, and the cause is remanded with instructions to dismiss the counterclaim and supplemental counterclaim and to enter a judgment that the Atkins Design Patent D–161,025 is invalid.