316 F.2d 848
 Charles O. BLISS, Charles O. Bliss and Beatrice Bliss, general partners of Blisscraft of Hollywood, a limited partnership, Appellants,
v.
GOTHAM INDUSTRIES, INC. and Morris Gottsegen, Appellees.
 No. 17795.
 United States Court of Appeals Ninth Circuit.
 March 21, 1963.
 
 1
 Lyon & Lyon, Los Angeles, Cal., for appellants.
 
 
 2
 Harris, Kiech, Russell & Kern, and Donald C. Russell, Los Angeles, Cal., for appellee Gotham Industries, Inc.
 
 
 3
 Before BARNES and HAMLIN, Circuit Judges, and FOLEY, Senior District Judge.
 
 
 4
 ROGER T. FOLEY, Senior District Judge.
 
 
 5
 In this action for infringement of Bliss Design Patent D-174,793, covering a design for a pitcher, joined with a claim of unfair competition, plaintiffs, the appellants here, appeal from the judgment of the District Court for the Southern District of California, Central Division holding invalid and not infringed the said patent and further holding that neither of the appellees have competed unfairly with the appellants.
 
 
 6
 The District Court had jurisdiction of appellants' first claim or cause of action by virtue of Title 28 U.S.C.A. § 1338(a).
 
 
 7
 Judge Solomon, of the District Court of Oregon, sitting in the Southern District of New York, in Blisscraft of Hollywood v. United Plastic Company, 189 F.Supp. 333, 337, held that the patent under consideration here was invalid for want of invention and for lack of ornamental design. The Court of Appeals of the Second Circuit agreed. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694.
 
 
 8
 The following quotations from the opinion of the Court of Appeals of the Second Circuit in that case, p. 696 of 294 F.2d well express the views we have formed after consideration of the testimony and exhibits before us as to validity of Design Patent D-174,793:
 
 
 9
 "The essentials for the issuance of a design patent are stated in 35 U.S.C. § 171.[1] The design must not only be new, original and ornamental, it must also be the result of invention.
 
 
 10
 "Plaintiff's pitcher is made of polyethylene. Structurally it is cylindrical in shape, has circular horizontal ridges around the body at uniform intervals, and has a flange-like base. It has an H-shaped handle with finger indentations, a scalloped snap-on lid with an extended pouring spout, and a hinged cap attached to the lid which fits over the spout.
 
 
 11
 "[1-4] Reference to the prior art discloses that plaintiff's pitcher is a combination of features of containers which were well known before plaintiff's production was begun. Of course, the mere fact that a person has utilized in combination a number of elements which severally were well known will not defeat the patentability of the combination. Graff, Washbourne & Dunn v. Webster, 2 Cir., 1912, 195 F. 522, 523. But the utilization of old elements in combination must represent an exercise of inventive skill and creative talent beyond that of the ordinary designer chargeable with knowledge of the prior art. International Silver Co. v. Pomerantz, 2 Cir., 1959, 271 F.2d 69, 71; General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853, 854, * * *. What plaintiff did amounted to nothing more than an unstartling regrouping of old elements which demonstrated no originality born of inventive faculty. This is not enough. Knickerbocker Plastic Co. v. Allied Molding Corp., 2 Cir., 1950, 184 F.2d 652, 655. It is not sufficient that plaintiff has shown the talent of an adapter; a manifestation of the art of the inventor was required. Blisscraft v. Rona Plastic Corp., D.C.S.D. N.Y.1954, 123 F.Supp. 552, affirmed 2 Cir., 1955, 219 F.2d 238. We agree with the district court that plaintiff's pitcher is lacking in the indispensable inventive ingredient. Plaintiff's commercial success in marketing its pitcher does not, without invention, make for patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162; Toledo Pressed Steel Co. v. Standard Parts, Inc., 1939, 307 U.S. 350, 357, 59 S.Ct. 897, 83 L.Ed. 1334.
 
 
 12
 "[5] Plaintiff's patent was invalid for another reason. To be patentable, a design, in addition to being new and inventive, must be ornamental. This means that it must be the product of aesthetic skill and artistic conception. Burgess Vibrocrafters, Inc. v. Atkins Industries, 7 Cir., 1953, 204 F.2d 311. Plaintiff's pitcher has no particularly aesthetic appeal in line, form, color, or otherwise. It contained no dominant artistic motif either in detail or in its overall conception. Its lid, body, handle and base retain merely their individual characteristics when used in conjunction with each other without producing any combined artistic effect. The reaction which the pitcher inspires is simply that of the usual, useful and not unattractive piece of kitchenware. The design fails to meet the ornamental prerequisite of the statute.
 
 
 13
 "While the issuance of the patent entitles it to a presumption of validity, this presumption is rebuttable. Here it must yield to the evidence of lack of invention and lack of ornamentation. The view which we take of the matter makes it unnecessary for us to consider whether the utilitarian or mechanical features of the pitcher were so dominant in the design conception as to prevent patentability. The issue of infringement is, of course, moot."
 
 
 14
 Appellants argue that the Trial Court erred in making its Conclusion of Law No. 4. The Conclusion of the Court is:
 
 
 15
 "Design Patent No. D-174,793 and the claim thereof are invalid and void, because the design was dictated primarily by functional or mechanical requirements and any ornamental or so-called pleasing effect was merely a by-product thereof."
 
 
 16
 They place considerable reliance upon Robert W. Brown & Co. v. DeBell, 9 Cir., 243 F.2d 200, on p. 202, and quote from the opinion by Judge Hamley, the following:
 
 
 17
 "Appellants make some contention that the Bessolo patent is invalid because it is primarily functional and utilitarian. This argument is based on the fact that the principal purpose of the design is to provide advertising space, and that the frame itself has the utilitarian purpose of holding a license plate.
 
 
 18
 "[4] It is true that the purpose of Congress in authorizing the grant of design patents was to give encouragement to the decorative arts. Such patents contemplate not so much utility as appearance. Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731. But it does not follow from this that a design which comprehends a useful, in addition to a decorative, purpose cannot be the subject of a valid design patent. While it is the design which is patented, it is immaterial that the subject of the design may embody a functional or utilitarian purpose."
 
 
 19
 We agree that a design which comprehends a useful and decorative purpose can be the subject of a valid design patent. However, appellants' "Poly Pitcher" is not ornamental and does not appeal to the eye as a thing of beauty; does not relate more to appearance and to matters of ornament than to utility and does not appeal to the aesthetic emotion.
 
 
 20
 The Trial Court was correct in holding that Design Patent D-174,793 and the claim thereof are invalid and void because the design was dictated primarily by functional or mechanical requirements and any ornamental or so-called pleasing effect was merely a by-product thereof. The patent being invalid, the issue of infringement is moot. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 697. Once invalidity is established, it is unnecessary to consider the question of infringement. It was so held by this Court in Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801, 804. There, Judge Lemmon, speaking for this Court, observed:
 
 
 21
 "There is a growing and pragmatical tendency among courts not to inquire into the alleged infringement of a patent once it has been found to be invalid.
 
 
 22
 "This trend probably has been encouraged by an observation in Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, where the Court said:
 
 
 23
 "`There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. [Cases cited.] It has come to be recognized, however, that of the two questions, validity has the greater public importance, * * *.'
 
 
 24
 "Realizing that an invalid patent cannot be infringed, many Federal courts have correctly proceeded no further after finding a patent void.
 
 
 25
 "In J. R. Clark Company v. Murray Metal Products Company, 5 Cir., 1955, 219 F.2d 313, 318, the Court said:
 
 
 26
 "`Whether, assuming Claim 1's validity, appellant might be entitled to prevail on the closer issue of infringement, we think it unnecessary for us to decide. Expressly pretermitting any holding upon that issue, we prefer to predicate our decision on what appears to us more solid ground, i. e. the proven invalidity of the patent in suit, both as anticipated in fact by the prior art, and for its failure, as a matter of law, to disclose that degree of novelty now required in order to vest a patentee with the statutory monopoly which an enforceable patent grants. [Cases cited.]'"
 
 THE CLAIM FOR UNFAIR COMPETITION
 
 27
 Appellants' claim for unfair competition is set forth in what they denominate "Second Cause of Action for Unfair Competition." All of the allegations contained in appellants' so-called First Cause of Action are by reference adopted and made a part of the Second Cause of Action.
 
 
 28
 As to the second or unfair competition count in their attack upon the findings and conclusions of the Trial Judge, appellants assume and argue that California state law should be applied in the determination of the issues raised by their claim for unfair competition. If the District Court's jurisdiction of this claim for unfair competition were based upon diversity of citizenship, undoubtedly, California law would apply. The Kemart and other cases relied upon by appellants in support of their theory of the applicability of California law are diversity cases.
 
 
 29
 In Kemart Corporation v. Printing Arts Research Lab., Inc., 9 Cir., 269 F.2d 375, on p. 388, this Court held:
 
 
 30
 "[1] It is clear that if the jurisdiction of the lower court was based solely upon the ground of diversity of citizenship, the proper law to be applied is that of the state wherein the district court is located. Erie [R. Co.] v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477."
 
 
 31
 That Kemart is a diversity case is recognized by this Court and clearly indicated by Judge Mathes' holding that "jurisdiction is conferred by 28 U.S.C. § 1332." D.C., 146 F.Supp. 21, 22.
 
 
 32
 California law in appellants' claim for unfair competition would apply only in the event that diversity of citizenship existed.
 
 
 33
 From Paragraph II of the complaint, adopted by reference as a part of the claim for unfair competition, and Paragraph X, being the second paragraph of appellants' claim for unfair competition, it is evident that appellants contend that we have diversity of citizenship here Said Paragraph II alleges:
 
 
 34
 "Upon information and belief that the Defendant Gotham Industries. Inc. is a corporation organized and existing under and by virtue of the laws of the State of New York, having its principal place of business in New York City, New York."
 
 And Paragraph X alleges:
 
 35
 "That as to the corporate defendant, Gotham Industries, Inc., the jurisdiction of this Court in this unfair competition action is based upon diversity of Citizenship, United States Code, Title 28, Section 1332 (a) (1), the amount in controversy, exclusive of costs and interest, being in excess of $10,000.00; and as to both defendants upon the United States Code, Title 28, Section 1338 (b), this being a claim for unfair competition joined with a substantial and related claim under the patent laws."
 
 
 36
 Appellants cite Kemart in support of their statement, "[that] California law is applicable is settled." If it is their theory that Kemart holds that California law would be applicable in a case for unfair competition in the absence of diversity of citizenship, such theory may be founded upon appellants' misunderstanding of Judge Bone's statement that
 
 
 37
 "[6] We conclude that regardless of whether appellant's cause of action for damages arising out of Printing Arts' [defendant's] allegedly `wrongful acts and doings' was one of `unfair competition' appended (by virtue of 28 U.S.C.A. 1338(b)) to its claim arising under the patent laws, or was one of libel having standing in the court below solely by virtue of the diversity of citizenship between the parties, the applicable law is that of the state of the forum."
 
 
 38
 What Judge Bone wanted to be understood by the above quotation was that Kemart being a diversity case, local law would apply regardless of whether the claim for unfair competition was "appended (by virtue of 28 U.S.C.A. 1338 (b)) to its claim arising under the patent laws" or stood alone in the complaint.
 
 
 39
 Have we diversity jurisdiction here? It will be seen from the Pretrial Conference Order that plaintiffs-appellants Charles O. Bliss and Beatrice Bliss are citizens of the State of California and that defendant-appellee Morris Gottsegen is a citizen of the State of California. As this Pretrial Order was not modified, it controlled the subsequent course of the action. It is also apparent from Paragraph XXI, being the last paragraph of that portion of the complaint denominated "Second Cause of Action," and from other allegations contained in the complaint, that appellants have sought relief on their claim for unfair competition from each of the appellees, it being alleged in said Paragraph XXI:
 
 
 40
 "That the aforesaid cause of action by the Defendants constitutes unfair competition, through which the Plaintiffs have suffered and continue to suffer irreparable damage, for which there is no adequate remedy at law, and for which Plaintiffs will have no relief except by the injunction of this Court against the continuation of said course of action by the Defendants."
 
 
 41
 The two appellees here are jointly charged and the same relief is sought against each of them.
 
 
 42
 Gottsegen was not an indispensable party to this action but was a proper party and appellants sought judgment against him in this so-called Second Cause of Action but failed to prevail against him due to failure of the evidence to establish their claim. We do not have here a controversy between citizens of different states, all of whom on one side of this controversy are citizens of different states from all parties on the other side, and this is not a case where the Trial Court could look beyond the pleadings and arrange the parties according to their sides in the dispute. In view of the allegations against him, Gottsegen must remain as a defendant regardless of the stipulation of counsel entered into upon the close of the trial. He was not dismissed before or during the course of the trial as a party defendant and the stipulation amounts to nothing more or less than an admission of counsel that upon the trial they failed to prove their alleged case against the defendant Gottsegen.
 
 
 43
 In Dryden v. Dryden, 8 Cir., 265 F.2d 870, 873, the diversity rule is stated:
 
 
 44
 "[2, 3] Upon the face of the pleadings the requisite diversity of citizenship appears between the plaintiff and the defendants. The plaintiff is a citizen of the District of Columbia and all defendants are citizens of Missouri. However, it is well established that the designation of parties as plaintiff or defendant in the pleadings is not controlling in determining jurisdiction. The applicable law is stated by the Supreme Court in City of Indianapolis v. Chase National Bank, 314 U.S. 63, 69-70, 62 S.Ct. 15, 17, 86 L.Ed. 47, as follows:
 
 
 45
 "`* * * To sustain diversity jurisdiction there must exist an "actual", [citing cases], "substantial", [citing cases], controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch. 267, 2 L.Ed. 435. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." [Citing cases.]'"
 
 
 46
 The following pronouncements of the Court of Appeals of the Eighth Circuit in Thomas v. Anderson, 223 F. 41, 43, apply here:
 
 
 47
 "[3] * * * Where a person whose presence in a suit is proper, but not indispensable, cannot be made a party without ousting the jurisdiction of the trial court, it may in its discretion proceed in his absence, and the decree shall be without prejudice to his rights. The thirty-ninth equity rule (226 U.S. 659, 33 Sup.Ct. xxix), to that effect is declaratory of the settled practice at the time of its adoption.
 
 
 48
 "[4, 5] When the trouble is noticed after the suit has been brought, the power of the court to retain jurisdiction by allowing amendments to pleadings and dismissals of those whose presence would oust it has been upheld in the interest of justice and the speedy determination of litigation. Grove v. Grove (C.C.) 93 Fed. 865. But the cure, if there can be one, must be had in the court of original cognizance, not in the appellate court. The former is the forum of first action, where the parties come and go, where the pleadings are presented and the issues formed and tried. The function of an appellate court is supervisory and corrective. By section 274c of the Judicial Code (Act March 3, 1915) it has been enlarged in case of an existing diversity of citizenship defectively alleged; but the power to allow amendment, so conferred, does not reach the case at bar. Various conditions in which cases have been sent back to trial courts with authority to make corrections to show jurisdiction appear in the following: [Citing cases] It was specifically held in Denny v. Pironi, supra [141 U.S. 121, 11 Sup.Ct. 966, 35 L.Ed. 657], that a case cannot be amended on appeal to show jurisdiction.
 
 
 49
 "The decree is reversed, and the cause is remanded, * * *."
 
 
 50
 There being no diversity of citizenship, California law does not apply to the appellants' claim for unfair competition. And, as diversity of citizenship is not present in this case, jurisdiction of appellants' claim for unfair competition is based entirely upon 28 U.S.C.A. § 1338(b), the said claim for unfair competition being joined with a substantial and related claim under the patent laws.
 
 
 51
 As the Court has jurisdiction by virtue of § 1338(b) of Title 28 U.S.C.A., we are not here confronted with the situation with which this Court had to deal in Dollar S.S. Lines, Inc. v. Merz, 9 Cir., 68 F.2d 594. There it was held that the District Court completely lacked jurisdiction. The District Court having jurisdiction of the subject matter of this controversy by reason of the Federal statute, this is not a case which should be remanded to the District Court with a direction to grant leave to amend the complaint or dismiss the defendant Gottsegen.
 
 
 52
 The Trial Court found that there was no evidence introduced at the trial that the appellees, or either of them, copied appellants' pitcher. The mere similarity of the pitchers would not in itself support a finding of copying, however, if it be assumed that there was copying.
 
 
 53
 Here the issues respecting design patent infringement and unfair competition are closely related. We agree with the views of the Court of Appeals of the Seventh Circuit in Day-Brite Lighting, Inc. v. Sandee Manufacturing Co., 286 F.2d 596, 600. There the Court stated:
 
 
 54
 "[5] In any event, it has been held that the mere copying of the design of an invalid patent does not constitute unfair competition. This Court, in Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 133 F.2d 266, 269, stated:
 
 
 55
 "`The defendant frankly admits it copied the plaintiff's table. If the plaintiff never had a patent, then the mere act of copying did not amount to unfair competition.'
 
 
 56
 "To the same effect is another decision by this Court, Sinko et al. v. Snow-Craggs Corp., 7 Cir., 105 F.2d 450. See also General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853, 854.
 
 
 57
 "[6, 7] The cited cases, after holding that the mere copying of a non-patented design is not sufficient, discuss and point out what the plaintiff must clearly prove in addition thereto in order to make a case of unfair competition. The principal elements are that the defendant represent its goods as those of the plaintiff, sometimes referred to as `palming off,' or that there be shown a `secondary meaning' as to source, that is, that the public has been deceived into the belief that defendant's design emanated from the same source as that of the plaintiff. In our judgment, plaintiff failed to make such proof. It is true the Court found that the public was likely to believe that defendant's panels were plaintiff's Cleartex panels and that the trade associates the appearance of Cleartex panels with plaintiff and its trademark `Cleartex.' Such findings, however, do not support the essential elements of `palming off' or `secondary meaning.' The fact, if such it be, that there was confusion in the minds of the public because of the similarity between plaintiff's and defendant's product bears upon the infringement issue if the patent had been held valid. It is immaterial, however, to the issue of unfair competition because, as we have shown, the mere copying of a non-patented article or design, absent the other essential elements, does not constitute unfair competition."
 
 
 58
 Again assuming from similarity of the pitchers that appellees copied, the principles enunciated by Judge Orr in Pagliero v. Wallace China Co., 9 Cir., 198 F.2d 339, 343, apply here and support the findings and conclusions of the Trial Court that appellees have not engaged in unfair competition:
 
 
 59
 "[5, 6] Tepco's use of the designs in question cannot be enjoined even though it be assumed that Wallace can establish secondary meaning for them. Imitation of the physical details and designs of a competitor's product may be actionable, if the particular features imitated are `non-functional' and have acquired a secondary meaning. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299. But, where the features are `functional' there is normally no right to relief. `Functional' in this sense might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection."
 
 
 60
 Then further on at page 344 the Court stated:
 
 
 61
 "Hence, the design being a functional feature of the china, we find it unnecessary to inquire into the adequacy of the showing made as to secondary meaning of the designs."
 
 
 62
 Appellants have failed to prove the appellees represented their goods as those of the appellants. There was no "palming off" and no showing has been made that the public has been deceived into the belief that the appellees' pitchers emanated from the same source as that of the appellants. The evidence would not support a finding that secondary meaning had been established. General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853, 854, 855.
 
 
 63
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 35 U.S.C.A. § 171: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title
 "The provisions of this title relating to patents for inventions shall apply to patents for design, except as otherwise provided."