**LONE RANGER TELEVISION, INC., a corporation, Plaintiff-Appellee,**

v.

**PROGRAM RADIO CORPORATION, a California corporation, JL Productions, Inc., a business entity, and Weston E. Lewis, Jr. aka Jim Lewis, Defendants-Appellants.**

No. 82–4690.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1984.

Decided July 26, 1984.

Thomas E. Schatzel, Bruce G. Spicer, Santa Clara, Cal., for plaintiff-appellee.

Thomas Doniger, Stanton & Oberstein, Los Angeles, Cal., for defendants-appellants.

Before WALLACE, KENNEDY, and CANBY, Circuit Judges.

WALLACE, Circuit Judge:

This appeal from summary judgment for federal copyright infringement and state law conversion requires us to return to the yesteryear of the Lone Ranger, and to the Copyright Act of 1909. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Around 1953, a Michigan company called The Lone Ranger, Incorporated owned several original scripts for radio plays about the Lone Ranger, a fictitious early Western hero. In part, this case involves twelve of those scripts. The company also owned three scripts of the first adventures of the Lone Ranger it planned to use for phonograph records. By 1954 the company held federal copyrights in all fifteen scripts. Meanwhile, it had recorded a production of each episode on magnetic tape. It first broadcast the radio plays in 1953 and 1954.

During 1954 The Lone Ranger, Incorporated transferred all rights in the tapes and the fifteen scripts to a California corporation with the same name. In 1962, the California company merged with the Wrather Corporation (Wrather). The rights to the scripts and tapes passed to Wrather, which later transferred them to a subsidiary, Lone Ranger Television, Incorporated (Lone Ranger TV). The copyrights in all fifteen scripts remained valid, either in their original term or by renewal.

Since at least 1960, the scripts' copyright owners have granted an exclusive license to lease Lone Ranger episodes for radio play. Since 1965, Charles Michelson, Incor-

porated has held this exclusive license. The scripts' copyright owners have also licensed various wholesalers and retailers to sell Lone Ranger records and cassette tapes for private home use. Both the tapes leased to radio stations and the recordings sold for home use contain a copyright notice.

In 1979, Jim Lewis, a former radio announcer, began unlicensed leasing of Lone Ranger episodes to radio stations. He bought reel-to-reel copies of the tapes from some collectors and re-mixed the recordings onto broadcast cartridges for radio play. The original tapes contained a copyright notice by The Lone Ranger, Incorporated at the end of each episode. Lewis's tapes reproduced this notice, although with disputed clarity.

Early in 1982 Lone Ranger TV sued Lewis and his two distribution companies, JL Productions and Program Radio Corporation (collectively Program Radio) in federal district court in California, claiming, among other things, infringement of its federal copyrights in the fifteen scripts and conversion of its intangible property rights in the tapes. As the company later made clear, its claimed rights in the tapes derived from California law. All the parties reside in California.

The district court permanently enjoined Program Radio from leasing the Lone Ranger tapes or otherwise infringing Lone Ranger TV's copyrights in the scripts. After denying Program Radio's motion for partial summary judgment, vacation of the injunction, and return of some tapes confiscated under a writ of seizure, the district court ordered Program Radio's counsel to pay $1,100 in fees under 28 U.S.C. § 1927. The district court had found counsel's motion, based on arguments of failure to register the copyrights and failure to record transfers of the copyrights, "patently frivolous." Finally, despite various arguments of estoppel, laches, unclean hands, innocent infringement, double recovery, federal preemption, and public domain, the district court granted summary judgment against Program Radio for federal copyright in-

fringement and for conversion. It awarded Lone Ranger TV federal statutory damages, damages for state law conversion, attorney's fees under federal law, and costs. Program Radio appealed.

II

In reviewing a summary judgment, we consider the evidence in the light most favorable to the losing party, and determine de novo whether there is any genuine issue of material fact and whether the winner is entitled to judgment as a matter of law. See M/V American Queen v. San Diego Marine Construction Corp., 708 F.2d 1483, 1487 (9th Cir.1983); Fed.R. Civ.P. 56(c). The scope of an injunction, even on summary judgment, lies in the district court's discretion, see, e.g., Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1256 n. 16 (9th Cir.1982), as does an award of attorney's fees against counsel under 28 U.S.C. § 1927 if supported by a not clearly erroneous finding of wrongful intent, recklessness, or bad faith, see Barnd v. City of Tacoma, 664 F.2d 1339, 1342–43 (9th Cir. 1982); see also Masalosalo ex rel. Masalosalo v. Stonewall Insurance Co., 718 F.2d 955, 957 (9th Cir.1983). We address first, the summary judgment of injunctive relief and damages for federal copyright infringement; second, the summary judgment of damages for state law conversion of intangible property rights; and last, the award of partial attorney's fees against counsel under 28 U.S.C. § 1927.

III

The Copyright Act of 1909, Act of March 4, 1909, ch. 320, 35 Stat. 1075, reprinted at 17 U.S.C.A. app. §§ 1–216 (West Supp. 1983) (1909 Act), did not permit owners of copyrights in scripts to copyright separately any sound recordings produced from them. When the 1909 Act was repealed by the Copyright Act of 1976, Pub.L. No. 94–553, tit. I, §§ 101–810, 90 Stat. 2541 (codified as amended at 17 U.S.C. §§ 101–810) (1976 Act), protection of sound recordings of copyrighted scripts was not extended to those "fixed" for playing before 1972. See

*Goldstein v. California,* 412 U.S. 546, 568, 93 S.Ct. 2303, 2315, 37 L.Ed.2d 163 (1973). Consequently, Lone Ranger TV has never registered any separate federal copyrights in the Lone Ranger tapes. Program Radio argues that, in the absence of such separate copyrights, duplication and distribution of the tapes cannot amount to a federal infringement. We disagree. Lone Ranger TV's valid copyrights in the underlying scripts secure to it, as Program Radio admits, the right to produce derivative works from them. Program Radio has infringed this right.

### A.

■ Program Radio admits that Lone Ranger TV's licensed broadcasts, leases, and sales of recordings based on the scripts have not dedicated the scripts to the public domain for purposes of federal copyright protection. *Cf., e.g.,* 17 U.S.C.A. app. § 7 (West Supp.1983) (1909 Act) (publication of "adaptations ... dramatizations ... or other versions ... of copyrighted works ... with the consent of the proprietor ... shall not affect ... any subsisting copyright"). It continues to claim, however, that Lone Ranger TV has not properly recorded the transfers of title in the scripts' copyrights, and thus may not sue for their infringement. *See* 17 U.S.C. § 205(d). The district court found this defense meritless, and we agree. The record adequately shows original ownership of copyrights in the scripts by The Lone Ranger Incorporated of Michigan, a recorded transfer of those copyrights to The Lone Ranger Incorporated of California, and subsequent recorded transfers from The Lone Ranger Incorporated of California to Wrather, and from Wrather to Lone Ranger TV. No genuine issue of material fact exists as to the continued validity of Lone Ranger TV's copyrights in the scripts or its right to sue on them for infringement.

### B.

■ Although Lone Ranger TV holds valid copyrights in the scripts, Program Radio correctly refused to consider the tapes produced by the copyright owners as "copies" of the scripts under the 1909 Act. *See generally* 1 M. Nimmer, *Nimmer on Copyright* § 2.03[B] at 2–29 (1983); *see also Sony Corp. of America v. Universal City Studios, Inc.,* —— U.S. ——, 104 S.Ct. 774, 804 n. 24, 78 L.Ed.2d 574 (1984) (Blackmun, J., dissenting) (*Sony*); *White-Smith Music Publishing Co. v. Apollo Co.,* 209 U.S. 1, 17, 28 S.Ct. 319, 323, 52 L.Ed. 655 (1908) (copy must be "in a form which others can see and read"). However, the 1909 Act not only restricted to the copyright holder the right to copy an original writing, *see* 17 U.S.C.A. app. § 1(a) (West Supp.1983); it also restricted to the holder the sole rights to prepare derivative works from a literary writing, *see* 17 U.S.C.A. app. § 1(b) (West Supp.1983) ("To translate ... or make any other version thereof, if it be a literary work; ..."), and to "produce, or reproduce ... in any manner or by any method whatsoever" a dramatic work, *see* 17 U.S.C.A. app. § 1(d) (West Supp.1983). These provisions give the copyright holder an exclusive right to derivative productions from his copyrighted scripts. *See also* 17 U.S.C.A. app. § 7 (West Supp.1983); *cf.* 17 U.S.C. § 106(2) (1976 Act's specific protection of derivative rights). As one commentator distinguishes between such a derivative right and a right to copy: "It is that point at which the contribution of independent expression to an existing work effectively creates a new work for a different market." Goldstein, *Derivative Rights and Derivative Works in Copyright,* 30 J. Copyright Soc'y U.S.A. 209, 217 (1983). *Cf. Sony,* 104 S.Ct. at 811 (Blackmun, J., dissenting). The Lone Ranger tapes meet this test: the contribution of independent expression by the actors, together with the contribution of independent expression by the special production methods of taping and editing for radio, effectively created a new work for a market different from both the market for printed scripts and the market for live dramas. *Cf. Gilliam v. American Broadcasting Co.,* 538 F.2d 14, 19–20 (2d Cir.1976) (videotaped programs of Monty Python skits are derivative works under the 1909 Act). Thus, although "[a]n unli-

censed use of [a] copyright is not an infringement unless it conflicts with one of the specific exclusive rights conferred by the copyright statute," *Sony*, 104 S.Ct. at 791 (1976 Act), the 1909 Act does confer a right with which Program Radio's unlicensed tapes of the scripts conflict.

In duplicating, remixing, and distributing the Lone Ranger tapes, Lewis in effect sought to manufacture and publish his own derivative work from the underlying scripts or make his own public production of the underlying scripts, just as if he had hired the actors, sound effects crew, and producers originally used for the tapes to do a second interpretation of the scripts for an audience. Comparisons with analogous precedents indicate that this interference with Lone Ranger TV's exclusive derivative rights in the scripts constitutes infringement. In our leading music case, *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972) (*Duchess Music*), copyright owners of various compositions sued several "tape pirates" selling tapes of phonograph records licensed by the copyright holders. We held that despite the 1909 Act's special provisions allowing anyone paying a small royalty to make "similar use" of a musical composition of which the owner had permitted any "mechanical reproduction," *see* 17 U.S.C.A. app. § 1(e) (West Supp.1983), the pirates could not sell "exact and identical copies of appellants' records," 458 F.2d at 1310. We said: "if the underlying work is copyrighted, there may be an infringement of that copyright by duplicating the record." *Id.* at 1309 n. 7, *citing Shapiro, Bernstein & Co. v. Goody*, 248 F.2d 260 (2d Cir.1957), *cert. denied*, 355 U.S. 952, 78 S.Ct. 536, 2 L.Ed.2d 529 (1958). *Cf. RCA Manufacturing Co. v. Whiteman*, 114 F.2d 86, 88–89 (2d Cir.), *cert. denied*, 311 U.S. 712, 61 S.Ct. 394, 85 L.Ed. 463 (1940) (no infringement from copying a record of a musical score in the public domain).

Program Radio contends that the 1909 Act provided protections unique to musical compositions, but our leading film case shows that the principle of protecting derivative works also applies to the ubiquitous literary or dramatic work. *See Russell v. Price*, 612 F.2d 1123 (9th Cir.1979), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980) (*Russell*). There, the copyright owners of George Bernard Shaw's play "Pygmalion" sued a film distributor leasing, without their license, prints of the film "Pygmalion" derived from the play. We held that, although the film had passed into the public domain under the 1909 Act, *see* 612 F.2d at 1126, the unauthorized leasing of prints of it infringed the underlying copyright in the play, *id.* at 1129. We held:

> although the derivative work may enter the public domain, the matter contained therein which derives from a work still covered by statutory copyright is not dedicated to the public. *G. Ricordi & Co. v. Paramount Pictures, Inc.*, 189 F.2d 469 (2d Cir.), *cert. denied*, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951); .... The established doctrine prevents unauthorized copying or other infringing use of the underlying work or any part of that work contained in the derivative product so long as the underlying work itself remains copyrighted.

*Id.* at 1128 (footnote omitted).

C.

█ As *Russell* makes clear, the protection of derivative rights extends beyond mere protection against unauthorized copying to include the right to "make other versions of, perform or exhibit the work." 612 F.2d at 1128 n. 16. It makes no difference that the derivation may not satisfy certain requirements for statutory copyright registration itself. *See* Goldstein, *supra*, at 229–32 & 231 n. 75 (discussing 1909 and 1976 Acts collectively) ("the Act does not require that the derivative work be protectable for its preparation to infringe"); *see also Kalem Co. v. Harper Brothers*, 222 U.S. 55, 61, 32 S.Ct. 20, 21, 56 L.Ed. 92 (1911) (a year before the 1909 Act's 1912 amendment, which specifically included movies as protectable works, *see* Kaplan, *An Unhurried View of Copyright*

36 (1967), the Court found the movie "Ben Hur" infringed the copyright in the book *Ben Hur*). Instead, the principles of *Duchess Music* and *Russell* lead us to conclude that Program Radio infringed Lone Ranger TV's rights under sections 1(b), 1(d), and 7 of the 1909 Act to derivative productions of its copyrighted scripts. In view of the clear copyright notices at the end of the Lone Ranger tapes, *cf. Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104–05 (9th Cir.) (copyright notice at end of films), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960), the records of the copyrights and their transfer in the Copyright Office, and the other evidence presented in support of summary judgment, Program Radio's arguments of estoppel and unclean hands lack merit. We affirm the district court's summary judgment of injunctive relief and statutory damages for federal copyright infringement.

### IV

A review of the summary judgment on Lone Ranger TV's conversion claim poses two questions. First, does such a claim based on state law but appended to a federal infringement claim permit application of state law if the parties lack diversity? Second, if state law applies, did the district court properly grant summary judgment under California law? If our answer to either question is no, we must reverse and remand.

### A.

The law of pendent jurisdiction in copyright is in some disarray. *See, e.g., Denys Fisher (Spirograph) Ltd. v. Louis Marx & Co. of W. Va.*, 306 F.Supp. 956, 959 n. 1 (N.D.W.Va.1969) ("split among the Circuit Courts of Appeal" over choice of law for pendent claims of unfair competition); *see generally* Annot., 58 A.L.R.Fed. 875 (1982). Our experience with pendent claims by nondiverse parties began in *Bliss v. Gotham Industries, Inc.*, 316 F.2d 848 (9th Cir.1963) (*Bliss*), where owners of a design patent for a pitcher sued a nondiverse defendant for federal patent infringement and unfair competition based on state law. We found the patent invalid, and held that "California law in appellants' claim for unfair competition would apply only in the event that diversity of citizenship existed." *Id.* at 852. We then interpreted 28 U.S.C. § 1338(b) to preserve our jurisdiction over a pendent claim of unfair competition even when the federal patent claim proved invalid and the unfair competition claim could not have been brought independently under diversity jurisdiction. *See id.* at 854. Section 1338(b) reads: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright ... laws." Next, in *Neal v. Thomas Organ Co.*, 325 F.2d 978 (9th Cir.1963), *cert. denied*, 379 U.S. 828, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964) (*Neal*), the owners of copyrights in an instruction manual for learning to play an organ, a manual sold packaged with four phonograph records of instruction and music by the copyright owners, sued the nondiverse manufacturer of the organ for federal copyright infringement and unfair competition. We held that *Bliss* forbade application of state law to the unfair competition claim under 28 U.S.C. § 1338(b), and pointed out that in this circuit, the substantive federal right against unfair competition is based upon the Lanham Act, 15 U.S.C. § 1126, whenever interstate commerce is involved. *See* 325 F.2d at 983–84, *citing, e.g., Stauffer v. Exley*, 184 F.2d 962 (9th Cir.1950).

Program Radio argues that under *Neal*, the district court erred by applying California law to Lone Ranger TV's conversion claim. We disagree. Subsequent to our decisions in *Bliss* and *Neal*, the Supreme Court announced a general rule for pendent claims irrespective of diversity: "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal

courts to hear the whole." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (*Gibbs*) (emphasis in original) (footnote omitted). Lone Ranger TV's pendent claims satisfy *Gibbs*'s criteria. To the extent *Neal* and *Bliss* hold we have no power to apply state law to the pendent state claims absent diversity, *Gibbs* overrules them.

Congress could restrict our power to apply state law to a pendent state claim of unfair competition in copyright, *see Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372–73, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978); *cf. Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139 ("allowable scope of the state claim implicates the federal doctrine of pre-emption"), but an examination of what little evidence of intent we have concerning 28 U.S.C. § 1338 leads us to conclude Congress has not done so. We agree with the district court in *American Foresight of Philadelphia, Inc. v. Fine Arts Sterling Silver, Inc.*, 268 F.Supp. 656, 661–62 (E.D.Pa.1967), that in section 1338(b) Congress did not intend "to preclude an extension of the pendent jurisdiction doctrine ... [but] wished to leave the way open to the Courts to deal with the jurisdictional problem as they wished." Congress sought to make clear the availability of pendent jurisdiction "to avoid piecemeal litigation," Reviser's Note to 28 U.S.C. § 1338(b), and the Reviser's reference to both the majority and dissenting opinions in *Musher Foundation v. Alba Trading Co.*, 127 F.2d 9 (2d Cir.), *cert. denied*, 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517 (1942) (*Musher*), *see* Reviser's Note to 28 U.S.C. § 1338(b), indicates Congress did not choose between a narrow or a broad interpretation of the doctrine. *See also* H.R.Rep. No. 308, 80th Cong., 1st Sess. (1947), *reprinted in* 1948 U.S.Code Cong. Serv. 1692, 1697 ("minor change[ ]"). The Supreme Court has adopted the broad interpretation found in Judge Clark's dissent in *Musher. See, e.g., Gibbs*, 383 U.S. at 723 n. 8, 724 n. 11, 86 S.Ct. at 1137 n. 8, 1138 n. 11. Section 1338 accommodates this judicial election and does not restrict us from applying state law under *Gibbs*. As the district court in *Silvers v. Russell*, 113 F.Supp. 119, 125 (S.D.Cal.1953) (apparently nondiverse parties), correctly observed: "when a cause of action for unfair competition is tried in the federal court on the theory of 'pendent jurisdiction,' 28 U.S. C.A. § 1338(b) ... state law must be applied."

Furthermore, although the term "unfair competition" in section 1338(b) may have a broad reach, *see, e.g.,* 3 M. Nimmer, *Nimmer on Copyright* § 12.01[B] at 12–15 (1983) (" 'idea' appropriation" in "action for breach of implied contract and violation of a confidential relationship will be regarded as claims of 'unfair competition' "), some claims for conversion may lie outside its scope. Lone Ranger TV distinguished the two: its fourth claim for relief was for unfair competition, its fifth, the one ruled on by the district court, was for conversion. The district court also did not rule on Lone Ranger TV's Lanham Act claim that would have brought the summary judgment within the unfair competition rationale of *Neal.* Section 1338(b) provides explicit authority for pendent jurisdiction over unfair competition claims. We do not read it to limit pendent jurisdiction in appropriate cases over other types of claims. *Cf. Drop Dead Co. v. S.C. Johnson & Son, Inc.*, 326 F.2d 87, 94 (9th Cir.1963), *cert. denied*, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964) (not citing section 1338). Thus, either the conversion claim lies within the ambit of "unfair competition," but 28 U.S.C. § 1338(b) accommodates *Gibbs*'s allowance for application of state law between nondiverse parties; or the conversion claim lies outside the ambit of "unfair competition," but 28 U.S.C. § 1338(b) does not limit the application of nonstatutory pendent jurisdiction to such claims under *Gibbs*. Either way, section 1338(b) simply indicates we should exercise our discretion in favor of deciding pendent unfair competition claims. It does not alter our discretion otherwise. In either case the district court properly applied state law to Lone Ranger TV's pendent state law conversion claim.

### B.

The case was filed in a district court in California. The parties agree California law governs the alleged property rights in the tapes if state law applies. State law does apply, so no question arises whether the district court properly chose California law to decide the conversion claim. *Cf. Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657, 662 (2d Cir.1955) (*Mercury Records*) (applying *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and then making a choice of law under state law).

Lone Ranger TV relies on *A & M Records, Inc. v. Heilman*, 75 Cal.App.3d 554, 142 Cal.Rptr. 390 (1977), *appeal dismissed and cert. denied*, 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118 (1978) (*A & M Records*), and *Capitol Records, Inc. v. Erickson*, 2 Cal.App.3d 526, 82 Cal.Rptr. 798 (1969), *cert. denied*, 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970) (*Capitol Records*). In *A & M Records*, the court held that master recordings of performances embody the manufacturer's and owner's intangible personal property interest in the performances. 75 Cal.App.3d at 564, 570, 142 Cal.Rptr. at 396, 400. The court cited both Cal.Penal Code § 653h(b) (West 1970), enacted in 1968 to punish record piracy, and cases explaining the common law property interest in recordings and the right to reproduce them, *Mercury Records*, and *Radio Corp. of America v. Premier Albums, Inc.*, 19 App.Div.2d 62, 240 N.Y. S.2d 995, 997 (1963). Similarly, in *Capitol Records* the court reviewed several precedents, including *Mercury Records*, many of which identified a common law intangible property interest in "the product itself— performances embodied on the records," 2 Cal.App.3d at 538, 82 Cal.Rptr. at 806. After reviewing them, the court "noted further" in a brief two sentences the recent enactment of Cal.Penal Code § 653h. 2 Cal.App.3d at 537, 82 Cal.Rptr. at 805.

■ A fair reading of *A & M Records* and *Capitol Records* indicates that Lone Ranger TV's intangible property interest in the performances on its tapes does not depend on Cal.Penal Code § 653h. Program Radio's argument that no intangible property interest embodied by the tapes could exist before the 1968 enactment of section 653h has no merit. Under California law, Lone Ranger TV would have an intangible property interest in the performances on tape from the time of their recording. *Cf.* Cal.Civ.Code § 980(a)(2) (West Supp.1984) (enacted August 25, 1982) (codifying ownership rights in sound recordings fixed before 1972). In *A & M Records*, the court affirmed that "by recording and offering for sale performances owned" in the master tapes, a distributor like Program Radio misappropriated and sold an intangible property interest. 75 Cal.App.3d at 570, 142 Cal.Rptr. at 400. "Such misappropriation and sale of the intangible property of another without authority from the owner is conversion." *Id.* While the court implied conversion was a species of unfair competition, *see* 75 Cal.App.3d at 564, 570, 142 Cal.Rptr. at 396, 400; *see also Capitol Records*, 2 Cal.App.3d at 537–38, 82 Cal. Rptr. at 806, our construction of 28 U.S.C. § 1338(b) makes any distinction or similarity between conversion and unfair competition irrelevant here.

### C.

■ Program Radio responds that if the tapes embody an intangible property interest in the performances recorded, the owner of the tapes lost that interest by publishing them in radio broadcasts and sales for home use. Under the state law in force at the time of the filing of this suit, Cal.Civ. Code § 983(a) (West 1982), *deleted by* 1982 Cal.Stat. 574, § 5 (enacted August 25, 1982), "[i]f the owner of a composition in letters or arts publishes it the same may be used in any manner by any person, without responsibility to the owner, insofar as the law of this State is concerned." Lone Ranger TV argues it had not "published" the tapes within the meaning of this statute. California law appears to the contrary. In *Stanley v. Columbia Broadcasting System*, 35 Cal.2d 653, 221 P.2d 73 (1950) (*Stanley*), the California Supreme

Court held that the script owner and producer of a pilot of a radio show, performed and taped before a live audience, then distributed to prospective sponsors, advertising agencies, and broadcasting companies, had not published his idea for purposes of section 983. Instead, he had made only "a 'restricted or limited' publication ... [like] performances of a dramatic or musical composition before a select audience, private circulation of the manuscript, etc." 35 Cal.2d at 666, 221 P.2d at 80. However, Lone Ranger TV's commercial distribution of its recordings lacks this quality of "restricted or limited" publication.

Lone Ranger TV replies that when the language of section 983 changed in 1947 from "[i]f the owner of a product of the mind intentionally makes it public" to "[i]f the owner of a composition in letters or art publishes it," this changed the standard for "publication" as defined in cases like *Stanley*. We find no evidence that this change altered the scope of "publication" for divesting state or common law copyright. Instead, the change from "product of the mind" to "composition in letters or art," *see also* Cal.Civ.Code § 980 (West 1983) (same change in language in 1947), restricted the possible subjects of state law copyright to traditional protectable property under common law copyright. *See, e.g., Weitzenkorn v. Lesser*, 40 Cal.2d 778, 789, 256 P.2d 947, 956 (1953) ("The Legislature has abrogated the rule of protectibility of an idea [as found in *Stanley*] and California now accepts the traditional theory of protectible property under common law copyright.").

This does not mean, however, that Program Radio could freely duplicate and distribute Lone Ranger TV's tapes. As *A & M Records* clearly states, the conversion or unfair competition claim lies outside copyright: "A & M Records' action against Heilman for duplicating without consent *performances* embodied in A & M Records' recordings is independent of any action that the owners of the underlying compositions might bring ... for copyright infringement.... Heilman's ... 'affirmative [copyright] defense' is irrelevant to A & M Records' unfair competition claim," 75

Cal.App.3d at 564, 142 Cal.Rptr. at 396 (emphasis in original), and "the court did not award damages based on copyright infringement. Heilman's liability was imposed because he had engaged in unfair competition," *id.* at 571, 142 Cal.Rptr. at 400. Publication under section 983(a) in effect at the time of the filing of this suit and protection under section 980 concern only copyright. On the basis of *A & M Records*, Lone Ranger TV's protection against conversion of an intangible property right in the performances embodied in its tapes is unaffected by notions of copyright. We affirm the district court's summary judgment of damages for conversion under California law. Program Radio makes no argument that the court erred in its measure of damages if California law applies, and *A & M Records, see* 75 Cal. App.3d at 570, 142 Cal.Rptr. at 400, supports the gross proceeds measure chosen. *See also Swim v. Wilson*, 90 Cal. 126, 128, 27 P. 33, 34 (1891).

## V

Finally, Program Radio argues that the district court abused its discretion by awarding fees against Program Radio's counsel under 28 U.S.C. § 1927. Section 1927 allows an award of fees against counsel who "multiplies the proceedings in any case unreasonably and vexatiously." The district court found that in pursuing a motion to vacate the previously entered permanent injunction and for other relief, counsel intended "to harass plaintiff and prolong this action" by, among other things, advancing arguments previously raised and rejected, failing to provide factual support from the record or affidavits, and failing to cite authority other than statutes. To the extent the district court found Program Radio's motion exhibited bad faith for such short-comings in the abstract, we disagree. Program Radio advanced arguments previously rejected because it wished the district court to reverse its grant of injunctive relief upon reconsideration. It did not have to provide affidavits to seek summary judgment under rule

56. *See, e.g.,* Fed.R.Civ.P. 56(b) ("with or without supporting affidavits"). Program Radio cited statutes because statutes are a recognized source of law.

■ Some merit in counsels' actions, however, does not preclude an award under 28 U.S.C. § 1927. *See McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir.1981); *see also Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 182 (D.C.Cir. 1980) (*Lipsig*) ("we do not agree ... that a party who offers a legitimate defense cannot have been obstinate in the process.... [I]ndeed, even a winner may have to pay obstinacy fees."); *Wright v. Jackson*, 522 F.2d 955, 958 (4th Cir.1975).

■ Given the history of this litigation, we cannot say the district court clearly erred in finding bad faith in the methods Program Radio's counsel used to prosecute its motion. *Cf. Lipsig*, 663 F.2d at 182 ("While the presence of merit in a claim or defense may well negate any notion of bad faith in its *filing*, it certainly cannot justify abuse of the judicial process in the *methodology* of its *prosecution.*") (emphasis in original). For example, a chief argument advanced by Program Radio involved the chain of title in the scripts' copyrights. Lone Ranger TV had set out that chain of title in earlier affidavits and pleadings. Program Radio offered no factual support for its challenge to that chain, yet obliged Lone Ranger TV to make a new, lengthy recitation of it.

The district court's finding of intent, a finding of fact not clearly erroneous on the record before us, *see generally Masalosalo ex rel. Masalosalo v. Stonewall Insurance Co.*, 718 F.2d 955, 957 (9th Cir.1983); *cf. Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir.1982) (inadequate record), supports an exercise of discretion to tax fees under section 1927. Although a close question, we hold the district court did not abuse its discretion. As the district judge observed: "While zealous advocacy is laudable, it has its limits."

AFFIRMED.