FREEMAN v. THE TRADE REGISTER, Inc.

(Circuit Court, W. D. Washington, N. D. October 18, 1909.)

No. 1,276.

1. COPYRIGHTS (§ 26*)—PROCEEDINGS TO OBTAIN—REQUISITES TO VALIDITY.

The law of copyright in the United States is entirely statutory, and all the conditions prescribed are essential and must be observed to give a valid copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 24; Dec. Dig. § 26.*]

2. COPYRIGHTS (§ 27*)—PROCEEDINGS TO OBTAIN—TITLE OF WORK.

The fact that the January number of a monthly periodical called the "Pacific Fisherman," which contained a review of the fishing industry for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the preceding year, bore on the cover the words "Pacific Fisherman Annual," did not necessarily make such words the title of the publication within the meaning of the copyright law, and the depositing instead of the regular title of "Pacific Fisherman," cut from an inner page of the number, was a compliance with Rev. St. § 4956, amended by Act March 3, 1891, c. 565, § 3, 26 Stat. 1107 (U. S. Comp. St. 1901, p. 3407).

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 25, 26; Dec. Dig. § 27.*]

**3. COPYRIGHTS (§ 29*)—PROCEEDINGS TO OBTAIN—"TITLE PAGE."**

A preliminary page in a periodical which followed advertisements and preceded general reading matter, containing in display type the name of the publication and also the volume, number, and date of the issue, and a copy of which was deposited as the title to obtain copyright protection, must be considered the "title page" within the meaning of Act June 18, 1874, c. 301, 18 Stat. 78 (U. S. Comp. St. 1901, p. 3411), upon which or the page following the copyright notice is required to be printed, rather than a subsequent page containing the title in smaller type but without volume, number, or date, and the printing of such notice on the latter page only was not such a compliance with the express requirement of the statute as will sustain an action for infringement.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. § 29.*]

In Equity. Suit by Miller Freeman against The Trade Register, Incorporated. On final hearing. Bill dismissed.

Bogle & Spooner, for complainant.
Aust & Terhune, for defendant.

DONWORTH, District Judge. This suit is brought to restrain the circulation and distribution by the defendant of a publication called "The Trade Register Salmon Review.—Season 1904," on the ground that it infringes a copyright. It appears that complainant is the proprietor and publisher of a monthly publication called "Pacific Fisherman," published at Seattle for several years before and since the time mentioned. During the time complained of, it was the only periodical published on the Pacific Coast devoted exclusively to news and information concerning the fisheries. In the year 1904, particularly during the last four or five months of that year, complainant at considerable trouble and expense procured original data relating to the fishing industry on the Pacific Coast, for the purpose of publishing, at the year's close, an extensive annual review containing statistics and other items of interest bearing upon that subject. In order to make this attractive, complainant procured by correspondence and personal application numerous photographs of persons and places appropriate to such a publication. The work was completed and put into circulation toward the close of January, 1905, as a supplement to the regular January issue of the Pacific Fisherman. It contained, among other illustrations, two cuts labeled "Gulf of Georgia Cannery" and "Eagle Harbor Cannery," representing salmon canneries situated in British Columbia; also a cut entitled "Columbia River Fish Wheel," and another entitled "Fishing Scene on the Columbia River." The general illustrations were numerous and interesting, and there were many illustrated advertisements. The work was well printed on paper of good quality,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and, taken altogether, not only afforded important and valuable information, but also constituted a very readable and attractive volume. The defendant for a number of years had been publishing at Seattle a periodical called "The Trade Register," devoted to general business news, and in March, 1905, it issued a supplement headed "The Trade Register Salmon Review.—Season 1904." This supplement contained, as its heading indicated, a review of the salmon fishing industry for the year named, and there were also advertisements and illustrations. The four cuts above mentioned which had been printed in the Pacific Fisherman supplement also appeared in the Trade Register publication, and it is admitted by the defendant that they were actually copied by photographic half-tone process from the pages of the Pacific Fisherman.

The briefs of counsel discuss a number of propositions, but, as the question whether complainant has complied with the copyright laws of the United States lies at the threshold of the case, it must be first decided. Act June 18, 1874, c. 301, 18 Stat. 78 (3 U. S. Comp. St. 1901, p. 3411), enacts:

"That no person shall maintain an action for the infringement of his copyright unless he shall give notice thereof by inserting in the several copies of every edition published on the title page, or the page immediately following, if it be a book, * * * the following words, viz:—'Entered according to act of Congress in the year ——, by A. B. in the office of the Librarian of Congress at Washington' or at his option the word 'Copyright' together with the year the copyright was entered and the name of the party by whom it was taken out, thus;—'Copyright 18— by A. B.'"

Another section of the statute regulating copyrights requires the person applying for the copyright to deliver at the office of the Librarian of Congress, or deposit in the mail addressed to him, a printed copy of the title of the book for which he desires a copyright (Rev. St. § 4956, as amended by Act March 3, 1891, c. 565, § 3, 26 Stat. 1107 [U. S. Comp. St. 1901, p. 3407]). The act also provides that:

"Each number of a periodical shall be considered an independent publication subject to the form of copyrighting as above." Act March 3, 1891, c. 565, § 11, 26 Stat. 1109 (3 U. S. Comp. St. 1901, p. 3417).

The law of copyright in the United States is entirely statutory. All the conditions prescribed by Congress are important and essential and must be observed, or there is no right of action. This has been the uniform holding of the Supreme Court. In Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055, it is said at page 665:

"All the conditions are important; the law requires them to be performed; and consequently their performance is essential to a perfect title. On the performance of a part of them the right vests; and this was essential to its protection under the statute; but other acts are to be done, unless Congress have legislated in vain, to render the right perfect."

This principle has been applied in numerous subsequent decisions. Banks v. Manchester, 128 U. S. 244, 9 Sup. Ct. 36, 32 L. Ed. 425; Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547; Thompson v. Hubbard, 131 U. S. 123, 9 Sup. Ct. 710, 33 L. Ed. 76; Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731, 35 L. Ed. 470; Boucicault v. Hart, Fed. Cas. No. 1,692; Parkinson v. Laselle, Fed.

Cas. No. 10,762; Pierce Co. v. Werckmeister, 72 Fed. 54, 18 C. C. A. 431; Osgood v. A. S. Aloe Co. (C. C.) 83 Fed. 470.

Defendant urges that there was a failure to comply with the requirement of the statute relating to the depositing of a printed copy of the title of the publication. It contends that the real title of the work is that appearing on the cover, "Pacific Fisherman Annual," whereas the title deposited with the Librarian of Congress was cut from page 19 of the publication, and is an exact reproduction of the top four inches of that page. This contains in large type, occupying the full width of the page, the words "Pacific Fisherman," followed by the words, in smaller type of various sizes, "A Journal Devoted Exclusively to the Fishing Industry.—Volume III.—Seattle, Wash., San Francisco, Cal., and Vancouver, B. C.—January, 1905.—No. 1." I find no merit in defendant's contention on this point. The words on the cover are not the best evidence of the title of the work. In addition to the display heading on page 19, all other pages of the publication have printed in large type across the top the words "Pacific Fisherman"; and there is no question but that the work is a number or part of a number of that periodical, and that the title deposited was the correct one and fulfilled the requirements of the law.

A more serious question now presented is whether complainant has complied with the provision of the statute requiring notice of the copyright to be inserted on the title page, or the page immediately following, of the copyrighted work. This suit is, of course, to be determined without reference to the new copyright act of 1909. The act of 1874 made no distinction between books and periodicals so far as concerns the place for inserting the copyright notice. The work in question contains 106 pages consecutively numbered, besides four pages of paper cover. The cover and the first 18 pages are devoted exclusively to advertisements, embellished, as is customary, with advertising cuts. Page 19 is the first page which contains ordinary reading matter. That page has the display heading or title above described, and this is immediately followed by a descriptive article entitled, "Edible Mollusks of the Pacific," with the name of the writer, the rest of page being occupied by that article. The following pages to and including page 90 are devoted mainly to statistics and descriptive articles treating of the fishing industry and persons and things relating to that subject, with numerous illustrations, although advertisements frequently appear scattered throughout the general matter. The pages from 91 to the end, like the pages at the beginning, are confined to advertising. There are only two pages which can be suggested as being "the title page" of the work, namely, page 19, mentioned above, and page 51. Page 51 carries the same general heading, "Pacific Fisherman," across the top that is carried on every page of the work except page 19. It is divided into two columns. At the head of the left-hand column appear the words "Pacific Fisherman" in type somewhat larger than the general heading at the top of the page, but considerably smaller than the type used for the same words in the display heading on page 19. In the same column, next after the first line, the following is printed in small type: "A Monthly Journal Devoted Exclusively to the Com-

mercial Fisheries of the Pacific Coast." This is followed by ten lines of small type setting forth that the publication has been entered in the Post Office as second-class matter, that it is published on the 1st of each month by the Pacific Fisherman Company at a place named, and stating the terms of subscription, and the names of the editor and manager. Under this is printed, "Copyrighted 1905 by the Pacific Fisherman Company." The rest of that column and a part of the next are occupied by an article of an editorial nature, and this is followed by general reading matter. This notice of copyright is the only one printed in the entire work.

It is to be noted that there is nothing on page 51 indicating the volume or number of the periodical, or the date of the publication. For aught that appears on that page, the publication may belong to any volume or number of the Pacific Fisherman without regard to date. The heading on page 51 fails in essential particulars to set forth the title which had been deposited with the Librarian of Congress, whereas the full and accurate title so deposited appears on page 19.

No doubt it is often difficult to determine what is the title page in publications of this character. A number of the definitions of "title" and "title page" given in dictionaries in common use are set forth in the attached note.[1]

It is open to question whether any of the meanings assigned to those words by these authorities is at the same time sufficiently comprehensive and sufficiently exclusive to furnish a legal definition of the idea that Congress intended to convey by their use in the copyright statute. I do not find any adjudged case construing the statute in this particular. There is no doubt that it is the intention of the law that each book shall have a title—that is, some word or set of words by which it shall be known—and that the book shall contain one particular page de-

---

[1] Century Dictionary. Title. "A prefixed, designating word, phrase or combination of phrases; an initial written or printed designation; the distinguishing name attached to a written production of any kind: as the title of a book, a chapter or section of a book, etc.; the title of a poem. The title of a book in the fullest sense includes all the matter in the title page preceding the author's name or whatever stands in place of it. * * * The title by which a book is quoted, however, is nearly always the shortest form that will serve to designate it distinctively." Title page, "The preliminary page of a book or of a written or printed work of any kind, which contains its full title and particulars as to its authorship, publication, etc."

Webster's International Dictionary. Title, "The inscription in the beginning of a book usually containing the subject of the work, the author's and publisher's names, the date, etc." Title page, "The page of a book which contains its title."

Standard Dictionary. Title, (several definitions, but) "in cataloguing and quoting whatever part of the title page serves for precise identification." Title page, "A page at the front of a literary production containing the title. In books it usually contains the names of author and publisher and date of publication."

Worcester's Dictionary. Title, "An inscription over, or at the beginning of, something, serving as a name by which the thing is known, as the title of a book." Title page, "The page containing the title of a book."

Stormonth's Dictionary. Title, "The inscription at the beginning of a book intimating the subject of the work and usually the author's and publisher's names." Title page, "The first page of a book containing the title."

voted, in whole or in part, especially to the title. This page should.be one that is readily found without examining every page in the work. The page embracing the title in that way is "the title page" mentioned in the act. Usually the title page is looked for near the beginning of the work, and most of the dictionary definitions of "title" and "title page" embody that idea. The law, however, does not in express terms specify in what part of the work the title page shall appear, and common usage is certainly an element to be considered. Different classes of publications will present different characteristics, and the law must be reasonably applied to each class. But whatever features may or may not be definitive of the title page, it would seem to be beyond controversy that the title page must be a page which con-. tains the title.

As above noted, the act of 1891 provides that each number of a periodical shall be considered an independent publication, and this may imply that, in copyrighting the successive numbers, either the volume or number or date must be expressed. In the printed instructions sent out by the register of copyrights, this construction is adopted, and it is stated that, "in order to obtain copyright protection for a periodical, it is necessary to apply for the entry of the title of each separate issue distinguished by a statement of the volume, number and date of each issue." Whether the omission of volume, number, and date or any of them in the title deposited with the Librarian of Congress would be a fatal defect, it is not now necessary to decide, because the title deposited by complainant contained those particulars. I think it is plain, however, that when the title so deposited sets forth the volume, number, and date, they are so far essential elements of the title that they cannot be ignored in ascertaining the title page. In cataloguing and quoting, and even in ordinary conversation, either the volume and number or the date of a periodical must be stated, if anything approaching definite identification is desired. Consequently (confining the ruling to the facts of this case) a preliminary page which contains those particulars, and which further displays the general name of the periodical in a way calculated to induce the reader to consider it the title page, is the title page, rather than a subsequent page which prints the general name in smaller type without anything to identify the issue. General information relating to the periodical, such as names of editor and publisher, place of publication and terms of subscription, may be appropriate to the title page, but its presence or absence cannot be considered controlling in this case in view of the other facts above stated.

The president of the defendant, who has been engaged in the publishing business for a number of years, testifies that before copying the illustrations in question he examined complainant's publication for notice of copyright. He confined his examination to the cover and page 19 (which he considered the title page) for a copyright notice on the general work, and looked at the several pages containing the illustrations for copyright notices as to them. He discovered no notice. He did not examine page 51 until the commencement of suit caused him to make a more thorough examination.

Both parties have introduced evidence concerning the usage prevalent among publishers for the purpose of showing what is understood to be the title page, and a large number of periodicals published in the United States, some very well known and others not so well known, have been introduced in evidence or their usage shown. Complainant has produced some eight publications (all trade journals) which print the copyright notice, not on any preliminary page, but on a subsequent page partaking more of the nature of an editorial page, where the name of the publisher, terms of subscription, and similar information are given. However, on examining these publications it is found that, with perhaps one exception, the page on which the copyright notice is printed, contains not only the general name of the periodical, but, in addition, either the volume and number, or the date, of that particular issue. Where this is done, the distinctive title, of course, appears upon that page. These publications, therefore, do not tend to establish a usage in accordance with the treatment of the matter adopted by the complainant.

The foregoing considerations lead to the conclusion that page 19, and not page 51, was the title page of complainant's publication. The only remaining question is whether the requirement that the prescribed notice shall appear upon the title page, or the page immediately following, is so vital that omitting it from those pages, though printing it on another, is a noncompliance with essential conditions imposed by the statute. It is plain that this question must be answered in the affirmative, as otherwise it would be necessary to examine practically all of the pages of a book to ascertain whether or not it be copyrighted. Since Congress has designated the things to be done in order to maintain an action for infringement of copyright, everything prescribed by the act must be done in accordance with its dictates. In Thompson v. Hubbard, 131 U. S. 123, 149, 151, 9 Sup. Ct. 710, 719, 720, 33 L. Ed. 76, it appeared that Thompson was the original proprietor of a book which he duly entered for copyright in accordance with the provisions of the statute and obtained a valid copyright, and that he afterwards transferred his rights in the work and copyright to Hubbard. The first edition of the book contained a notice of copyright in accordance with the statute, but afterwards Hubbard changed the form of the notice so that in some editions it read only "Entered according to act of Congress," and in other editions it read only "Copyright 1880." The forms used by Hubbard did not comply with the statute, in that one of the forms did not state either the year in which the copyright was entered or by whom it was entered, while the other form mentioned the year but not the name. Notwithstanding that the acts constituting the alleged infringement were done by the original owner of the copyright, who, of course, had actual notice of the copyrighting, it was held that no action for infringement could be maintained. The court said:

"It is very clear that Hubbard, as the proprietor of the copyright, was bound to give the statutory notice in the several copies of every edition published by him, and that he did not do so. * * * His failure to give such notice debars him from maintaining an action for the infringement of his copyright. The word 'action' means an action either at law or in equity."

The court adds:

"The view is urged that the only object of the notice required by the statute is to give notice of the copyright to the public; and that as Thompson himself took the copyright, and had vested the title to it in Hubbard, he has no right to infringe the copyright, although it may be invalid as to the rest of the world. But we are of opinion that the failure of Hubbard to comply with the statute operated to prevent his right of action against Thompson from coming into existence. This right of action, as well as the copyright itself, is wholly statutory, and the means of securing any right of action in Hubbard are only those prescribed by Congress."

For these reasons I am constrained to hold that the notice printed by complainant in the work now under consideration fails to comply with the requirements of the law. It follows, under the express provisions of the statute, that this suit cannot be maintained.

The bill will be dismissed, with costs.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes