John A. NEAL and John G. Duffy, individually and dba Workshop Publications, a co-partnership, Appellants,

v.

THOMAS ORGAN CO., a California corporation, Appellee.

No. 18386.

United States Court of Appeals
Ninth Circuit.

Dec. 27, 1963.

Rehearing Denied Jan. 31, 1964.

Pasarow & Spiegel, and Irwin O. Spiegel, Beverly Hills, Cal., for appellants.

Slavitt, Edelman & Weiser, and Herbert M. Weiser, Beverly Hills, Cal., for appellee.

Before BARNES, JERTBERG and DUNIWAY, Circuit Judges.

**BARNES, Circuit Judge.**

Appellants brought suit below against appellee for copyright infringement and unfair competition. The district court found for defendant, and plaintiffs appeal.

The district court had jurisdiction under 28 U.S.C. § 1338(a) and (b). This court has jurisdiction pursuant to 28 U.S.C. § 1291.

The basic findings of fact of the district court are uncontroverted and are here adopted.[1]

I. "II. That at all times relevant to this action, plaintiffs John A. Neal and John G. Duffy were partners doing business under the firm name and style of Workshop Publications; that plaintiff filed and published a notice of doing business as Workshop Publications under the provisions of California Civil Code Sections 2466 and 2568.

"III. That for twenty-five years last past, plaintiff John G. Duffy has been an accomplished pianist, organist and piano and organ instructor. Prior to any business or dealing relationship with the defendant, plaintiff, John G. Duffy created, originated and wrote a course of instruction for teaching · students to play the piano in fifty or fewer lessons.

"IV. That plaintiff John A. Neal is skilled in the art of sound recording. Prior to any business or dealing relationship with defendant, plaintiffs had numerous discussions between themselves with respect to the production of Duffy's course of instruction as a self-teaching device in the form of an instructional manual to be used by the student in conjunction with sound recordings.

"V. That at all times relevant to this action, defendant Thomas Organ Co. was a California corporation engaged in the business of distributing organs manufactured by its parent corporation, Pacific Mercury Electronics, Inc.

"VI. That in March, 1957, defendant was interested in finding a self-teaching course of organ instruction as a give-away package for its distributors and dealers to induce them to buy and sell the Model 'G' Thomas electronic organ. Defendant became acquainted with plaintiffs and their course of instruction and encouraged plaintiffs to adapt it for defendant's said use.

"VII. That prior to entering into any contractual relationship with defendant and solely in anticipation of a possible sale to defendant, plaintiffs adapted their course of instruction to defendant's Model 'G' organ in substantially the condition in which it now exists and by August 1957, plaintiffs were ready for manufacture and sale of the same.

"VIII. In August, 1957, plaintiffs, as Workshop Publications, entered into an oral agreement with defendant whereby it was agreed:

That plaintiffs would manufacture and sell said course consisting of a printed instructional manual and recordings embodying narrative and musical material to be performed by Duffy in lots of 1,000.

Defendant agreed to advance the sum of $1,670.00 for plaintiffs' initial manufacturing costs and pay plaintiffs for each course purchased 10% above the cost thereof plus an additional royalty of fifty cents on each course purchased payable to Duffy through Workshop Publications.

The defendant was to recoup the manufacturing costs and expenditures advanced by it in the resale of the course to its distributors, at a nominal price therefor.

That plaintiffs were to have and retain control and approval over any reproduction of their said course. In this regard, defendant acquiesced in plaintiffs' request that they be the copyright proprietors of said course.

That the name or title of plaintiffs' course would be "HAVE FUN AT THE THOMAS ELECTRONIC ORGAN WITH JOHNNY DUFFY."

As an added inducement defendant led plaintiffs to believe that their course would receive national advertising and that defendant would distribute the course at a ratio of one or two courses for every two to five organs so as to enable plaintiffs to engage in independent sales activity once the ultimate consumer

The main legal questions are (1) whether appellants have a copyright on a text valid against the whole world, or (2) at least valid against appellee, and

became acquainted with defendant's organ and plaintiffs' course of instruction; however, the specific amount of such advertising and the exact ratio of courses to organs was not definitely agreed upon and left to future negotiations.

"IX. That pursuant to said agreement, from August to December, 1957, plaintiffs caused to be manufactured and sold to defendant, 2,000 units of their course consisting of the so-called first edition of plaintiffs' printed instructional manual and four records embodying the performance of Duffy. In December, 1957, plaintiffs and defendant negotiated and orally agreed to an increase in price to $695.00 per 1,000 units of said course. Plaintiffs made minor changes in their instructional manual and during the period of time from December, 1957 to December, 1958, plaintiffs caused to be manufactured and sold to defendant approximately 4,000 units of said instruction course consisting of the so-called second edition of plaintiffs' printed instructional manual and four records embodying Duffy's performance.

"X. That defendant paid plaintiffs for all of said courses purchased by it the price agreed to be paid therefor and plaintiffs did not charge defendant any fictitious or excessive costs in connection therewith.

"XI. Plaintiffs' copyright notice appeared on the third page of each and every copy of the first and second edition of said printed instructional manual in the following form: '© 1957 by Workshop Publications.'

"XII. The first and second editions of plaintiffs' said printed instructional manual contained copyrightable subject matter.

"XIII. That the title of the first and second editions of plaintiffs' said printed instructional manual is 'HAVE FUN AT THE THOMAS ELECTRONIC ORGAN WITH JOHNNY DUFFY.' This title appears only on the front cover or first page of said works. The reverse side of the front cover or second page is blank. The front side of the first leaf inside the cover or the third page contains plaintiffs' said notice of copyright and this is the only place at which plaintiffs' notice of copyright appears. The said first leaf or third page is the only place at which a textual description of the course and instructions to students appear. The said first leaf or third page contains no music whatever.

"XIV. That plaintiffs deposited two copies of the first edition of said printed instructional manual together with a claim to copyright therein under the laws governing copyright and the Register of Copyrights issued Certificate of Registration No. 114,474 therefor. Plaintiffs deposited two copies of the second edition of said printed instructional manual together with a claim to copyright therein under the laws governing copyright and the Register of Copyrights issued Certificate of Registration No. 471,165 therefor.

"XV. That in January, 1959, plaintiffs received information that defendant was selling their course to its distributors and dealers at a substantial profit. That plaintiffs requested an increase in the price for their course but defendant refused any such increase in price. That defendant requested plaintiffs to adapt their course to apply to all of defendant's organ models and sell the same to defendant at the same price at which defendant was purchasing the then existing course. That plaintiffs rejected such demand and thereupon defendant further demanded that plaintiffs deliver the printing plates and master recording materials to defendant for defendant's use of the same in the production and sale of a course of instruction by defendant and further requested the use of Duffy's name on and in connection with such course. Plaintiffs refused to comply with such demand and notified defendant in writing that any reproduction of plaintiffs' materials would result in legal action.

"XVI. Commencing in March, 1959, and continuously thereafter to and including the time of the trial hereof, defendant manufactured and sold a course of organ instruction entitled 'HAVE FUN AT THE THOMAS ELECTRONIC ORGAN' consisting of a printed instructional manual and four records. The printed instructional manual produced and sold by defendant is substantially identical in form and content to the first and second editions of plaintiffs' said instructional manuals and was copied therefrom. The four records produced and sold by defendant embody narrative material most of which was written by plaintiffs but with minor changes applying to all of defendant's organ models. Defendant reorded such narration and narration with music by its own performers, but Duffy's recorded performance is reproduced and duplicated on all four records. However,

(3) whether appellee was guilty of unfair competition concerning certain recordings.

## I. DO APPELLANTS HAVE A COPYRIGHT ON THE MANUAL VALID AGAINST THE WHOLE WORLD?

Section 20 of the Copyright Act (17 U.S.C.) provides in pertinent part:

"The notice of copyright shall be applied, in the case of a book or other printed publication, upon its title page or the page immediately following, * * * or if a musical work either upon its title page or the first page of music."

Appellants have admittedly complied with all of the other requirements of the Copyright Act. The only question is whether they have properly placed the notice of copyright. The title of their publication appears only on the cover. The other side of the leaf on which the cover appears has been held to be the "page immediately following," i. e., the second page. Kraft v. Cohen, E.D.Pa.1940, 32 F.Supp. 821, reversed on other grounds, 3 Cir. 1941, 117 F.2d 579. The third page contains text and the copyright notice. The fourth page is the first page of music. Under the statute, appellants could have complied with the notice requirement by placing the notice of copyright on the cover or on the fourth page, if the work is a musical composition, or on the second page, if the work is a book. By the definition in Kraft v. Cohen, supra, the notice is on the third page. Yet appellants contend that this placement constitutes literal or substantial compliance with the statutory requirement such that they have a copyright valid against the whole world.

Basically, the argument of appellants is that the title page is not the cover page but the third page. They support this argument with (1) cases which state that the purpose of the copyright requirements is to protect innocent persons who are unaware of the existence of the copyright from suffering or making use of the copyrighted article,[2] (2) cases which state that the copyright statutes must be liberally construed,[3] and (3) cases which state that to determine which page is the title page the court must look at the peculiar characteristics of the particular publication.[4]

We do not believe that the third page can be deemed to be the "title page." All four of the cases cited in footnote 4 are strong authority *against* the argument of appellants that the third page rather than the covering page is the "title page."

Duffy's recorded performance so reproduced and duplicated constitutes less than half of the performances recorded thereon.

"XVII. That from March 1959, to the date of trial, defendant sold approximately 5,578 courses of instruction manufactured and produced by it as aforesaid, realizing substantial net profits therefrom."

2. Burrow-Giles Lithographic Co. v. Sarony, 1884, 111 U.S. 53, 55, 4 S.Ct. 279, 28 L.Ed. 349; Fleischer Studios v. Ralph A. Freundligh, Inc., 2 Cir. 1934, 73 F.2d 276, 277, cert. den. 294 U.S. 717, 55 S. Ct. 516, 79 L.Ed. 1250; H. M. Kolbe Co., Inc. v. Armgus Textile Co., Inc., 2 Cir. 1963, 315 F.2d 70; National Comics Publications v. Fawcett Publications, 2 Cir. 1951, 191 F.2d 594, 603.

3. Washingtonian Publishing Co., Inc. v. Pearson, 306 U.S. 30, 36, 59 S.Ct. 397, 83 L.Ed. 470 (1939); Silvers v. Russell, 113 F.Supp. 119 (S.D.Cal.1953); Shapiro-Bernstein & Co. v. Jerry Vogel Music Co., 2 Cir., 1946, 161 F.2d 406, cert. den. 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837; Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 173 F.Supp. 292, 305 n. 10 (S.D.N.Y.1959) aff'd 2 Cir., 274 F.2d 487; Trifari Krussman & Fishel, Inc. v. Charel Co., 134 F.Supp. 551, 554 (S.D. N.Y.1955); and sixteen other cases cited in Doyle et al., Notice of Copyright, Study No. 7, Sub-Committee on Patents, Trademarks and Copyrights of the Committee on the Judiciary, U.S. Senate, 86th Congress, 2d Sess., pursuant to S.Res. 240, at P. 11.

4. Freeman v. The Trade Register, 173 F. 419 (C.C.W.D.Wash.1909); Booth v. Haggard, 184 F.2d 470 (8 Cir. 1950); Siewok Tool Co. v. Morton, 128 F.Supp. 71 (D.C.Mich.1954); Powell v. Stransky, 98 F.Supp. 434 (D.C.S.D.1951).

In particular, we consider unanswerable the following observation in Freeman v. The Trade Register, C.C.W.D.Wash.1909, 173 F. 419, 424:

> "But whatever features may or may not be definitive of the title page, it would seem to be beyond controversy that the title page must be a page which contains the title."

Thus, the cover is the "title page," for it is the only page which contains the title.

However, even if the statutory notice does not appear on the title page, it is adequate if it appears on "the page immediately following." Is the third page "the page immediately following" the "title page"? Judge Kalodner ruled that it was not. Kraft v. Cohen, supra. However, in so holding, he relied entirely upon a dictionary definition of the word "page" as meaning one side of a leaf of a book. That definition, however, can support an opposite conclusion. An average citizen would regard the cover as something different from the leaves of a book or pamphlet. Webster's New International Dictionary, 3d Edition, defines cover as "a binding or case for a book or the comparable outer part of a pamphlet or magazine." Funk & Wagnall's New Standard Dictionary defines cover as "that which is spread or fitted over, or encloses anything." The same dictionary defines leaf, so far as material here, as "something resembling a leaf [of a tree] in being broad, thin and flat, or in being movable attached, by an edge or an end to something else; (1) a single division of a folded sheet of paper, or the like, as in a book * * *." We are satisfied that the average citizen thinks of the leaves of a book as being, as Funk and Wagnall says, *in* the book, meaning inside the cover of a book.

Thus it seems reasonable for an average citizen to conclude that the page immediately following the title page could be the third page because that is the first page on the first leaf. Of course, it would also be reasonable to conclude that notice on the inside front cover is sufficient. We think notice on either is sufficient, but limit our opinion to the peculiar circumstances of this case in which the title appears only on the cover and in which the cover is of a harder and less malleable material than the leaves within.

Although the cases cited in our footnotes 2 and 3 do not go directly to the issue involved here, the policy and trend indicated in those cases lend support to our conclusion here. We recognize there is little room here for "liberal interpretation" or for a consideration of "Congressional intent." We also recognize that the United States has refused to adopt for Americans the practice prevalent in most European countries whereby notice is sufficient when placed in such manner and location as to give reasonable notice of the claim of copyright.[5] Yet we believe the conclusion which we reach does not do violence to the copyright laws where the correct answer is not obvious from the statute. We are influenced by the following observations of Judge Learned Hand:

> "We are unwilling to allow a barefaced infringer to invoke an innocent deviation from the letter that could not in the slightest degree prejudice him or the public." National Comics Publications v. Fawcett Publications, 2 Cir. 1951, 191 F. 2d 594, 603.

And:

> "[A] literal interpretation of the words of a statute is not always a safe guide to its meaning." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 2 Cir. 1960, 274 F.2d 487, 489.

We hold that under the circumstances of this case it was clearly erroneous to hold that appellants do not have a copyright valid against the whole world. Because of our conclusion on the first point, we need not reach the second question.

5. See 17 U.S.C. § 9(c) whereby the United States adopted such a lenient standard for nonresident aliens in accordance with the Universal Copyright Convention at Geneva, Switzerland, on September, 6, 1952.

## II. IS DEFENDANT GUILTY OF UNFAIR COMPETITION?

The copyright issues in this case relate only to the instruction book used by defendant since its falling out with plaintiffs, and not to the issue of unfair competition. The trial court correctly pointed out that both parties recognized the fact that copyright protection does not extend to phonograph records comprising performance of public domain literary property or musical compositions. Capitol Records v. Mercury Records Corp., 2 Cir. 1955, 221 F.2d 657, and cases cited p. 661. There could be no compliance with section 9 or 19 of the Act (17 U.S.C. §§ 10, 20), "publication with notice of copyright," "either upon its title page or the first page of music."

The unfair competition issue relates only to the phonograph records used by defendant subsequent to that same falling out with plaintiffs. Each of the four records involves several lessons. In a typical lesson the narrator describes a certain step, e. g., how to play in tango rhythm. Then the point is illustrated by plaintiff Duffy playing on the Model "G" organ. At times there are both narration and music. Most of the script used for the narrations by defendant was written by plaintiffs. Defendant changed performers for the narrations but used Duffy's performance for the musical illustrations where possible.

The trial court held that an action based on unfair competition is predicated on state law, relying on the same case cited above, Capitol Records v. Mercury Records Corp., 221 F.2d at p. 662. There Judge Dimock held that "[s]ince the Copyright Act does not deal with the protection of phonograph records of the performances of public-domain compositions by virtuosos, we have no basis for applying federal law," and that the law of the forum prevailed. Here, applying California law, the trial court concluded that there had been no unfair competition either as to narrations or as to musical illustrations. In reaching such conclusion, the trial court pointed out that "research fails to reveal any decisions from" the State of California, save Hesse v. Grossman, 1957, 152 Cal.App.2d 536, 313 P.2d 625; and McCord Co. v. Plotnick, 1951, 108 Cal.App.2d 392, 239 P.2d 32.

On this issue of unfair competition, we conclude that the judgment of the trial court must be vacated and the cause remanded. We are required to do so because of our decision in Bliss v. Gotham Industries, Inc., 9 Cir. 1963, 316 F.2d 848. In that case we held that, there "being no diversity of citizenship, California law does not apply to appellant's claim for unfair competition." (316 F. 2d p. 854) Here there was no diversity of citizenship. The plaintiffs alleged in their amended complaint that they were citizens of California and that defendant was a California corporation. The trial court could not have been aware of our holding in the Bliss case, for that case was decided five months after the trial court rendered its decision in this case. We thus remand for consideration in light of the Bliss case.

Of course, we had previously approved the applicability of California law in unfair competition cases where the jurisdiction was based *solely* upon the ground of diversity of citizenship. Kemart Corp. v. Printing Arts Research Lab., Inc., 9 Cir. 1959, 269 F.2d 375 at 388. And many opinions draw no line between the decisions of federal courts under federal law and those decided under state law.[6]

But this court flatly stated in Bliss v. Gotham, supra, that "[t]here being no diversity of citizenship, California law does not apply to the appellants' claim for unfair competition." (316 F.2d p. 854)

In holding that under the Lanham Act (15 U.S.C.A. § 1126) there had been cre-

6. "[We] quite often lump federal and New York law together, as in Hyde Park Clothes, Inc., v. Hyde Park Fashions, Inc., 2 Cir., 204 F.2d 223, 225 * * * or—even more conveniently—eschew all reference to the matter." Concurring opinion, *Maternally Yours v. Your Maternity Shop*, 2 Cir. 1956, 234 F.2d 538, 545.

ated a substantive federal law of unfair competition wherever interstate commerce was involved, the Ninth Circuit differs from other circuits. Stauffer v. Exley, 9 Cir. 1950, 184 F.2d 962; Pagliero v. Wallace China Co., 9 Cir. 1952, 198 F.2d 339; cf. Maternally Yours v. Your Maternity Shop, 2 Cir. 1956, 234 F.2d 538, especially note 1 and Judge Clark's concurring opinion, p. 545.

■■ Under the "pendent litigation" theory (28 U.S.C.A. § 1338(b)), the issues here involving the alleged infringement of the copyright and the alleged unfair competition were "substantial" and closely "related." Because "copying" was admitted, the court ordinarily would be required to consider whether a case of unfair competition had been made out, by proof that defendants "palmed off" their product, or by proof of secondary meaning as to source, either of which had deceived, or could deceive, the public. There appears no such proof in the record before us,[7] but do we know there might not have been, had the court below been of the view that federal rather than state law applied? The same result may occur on remand, but this we do not know, particularly in a case where both parties believed until midway during the trial that a valid copyright existed, and that such copyright issue was fundamental and controlling.

Finding no California law, the court below reasoned that a substantial duplication *would* be actionable; that a partial duplication of an important part *might* be; but that here "plaintiff Duffy's duplicated performance adds little or no value to the records," (Tr. 63) and that therefore there could be no recovery. "To award relief," said the trial court, upon such a *de minimis* misappropriation, "would, in effect, give recognition to plaintiffs' valuable property right in the entire instruction course which they lost by failing to comply with the strict but simple requirements of the copyright laws." (Tr. 63)

We believe such reasoning should not be followed in determining whether there had been actionable misappropriation. Either there had been such actionable misappropriation, or there had not been. If the former, no matter how slight, a cause of action existed. If the damage was so slight as to be *de minimis*, that rule would justify either a judgment for defendant, or more preferably (because more accurate), an award of nominal damages, such as one dollar or one cent. In other words, the court's problem was one of remedies, to be arrived at only after a determination that actionable misrepresentation existed.

We reverse the judgment in so far as it holds the copyright invalid, and vacate that part of the judgment concerning unfair competition; and remand for further proceedings not inconsistent with this opinion.

7. In fact, quite the contrary may be true. We note the deletion of Duffy's name, and the shorter title, on the subsequent recordings.